**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT**<br>**OPPORTUNITY COMMISSION,** | |
| **Plaintiff,** | **Civil Action No. 17 CV 00129-LRR** |
| **v.** | |
| **CRST INTERNATIONAL, INC.;**<br>**CRST EXPEDITED, INC.** | **PLAINTIFF EEOC'S BRIEF IN**<br>**OPPOSITION TO DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT** |
| **Defendants.** | |

Plaintiff, Equal Employment Opportunity Commission (referred to as "EEOC"), pursuant

to Federal Rule of Civil Procedure 56(c) and Local Rule 56(b)(1), hereby submits the following Brief

in Opposition to Defendants' Motion for Summary Judgment.

## TABLE OF CONTENTS

I.    CRST Cannot Use After-Acquired Evidence of Alleged Misrepresentations on
      Laferriere' s DOT Medical Form to Challenge EEOC's Prima Facie Showing that
      Laferriere was Qualified for the Driver Job…………………………………………3

II.   Even if After-Acquired Evidence Could be Considered, Disputed Issues Would
      Preclude Summary Judgment on the Basis of Laferriere' s Qualifications ….....…5

      A.  Whether Laferriere Made Any Misrepresentations on His DOT Physical Form
          is Disputed……………………………………………………………….…….6

      B.  A Jury Could Find That Kwiatkowski's Testimony Does Not Establish that
          Laferriere was Unqualified…………………………………………….……...6

      C.  A Jury May Discredit Kwiatkowski's Testimony Because Her Alleged Practice
          of Automatically Disqualifying Anyone Who███████████is at Odds
          with DOT Regulations and Guidance…………………………………………..9

i

D. A Reasonable Jury Could Conclude That Laferriere Would Have Been Qualified Pursuant to the Regulatory Appeal Process…………………………10

E. CRST is Impliedly Raising a Direct Threat Defense on Which It Has Not Met its Burden of Proof…………………………………………………………………11

F. Automatically Disqualifying Applicants Who ███████████ is a Qualification Standard Not Justified by Business Necessity…………..……..12

III. CRST's Argument That Laferriere's Dog Was Not a Service Dog Prescribed by a Doctor Does Not Entitle Defendants to Summary Judgment………………..…13

IV. CRST Retaliated Against Laferriere When It Refused to Allow Him to Proceed to Orientation and Failed to Hire Him When the Company Adopted a Service Dog Policy…………………………………………………………………………..…….16

CONCLUSION……………………………………………………………..……20

Case 1:17-cv-00129-LRR   Document 68   Filed 07/06/18   Page 2 of 22

It is undisputed that in May of 2015, Leon Laferriere, an Iraq War veteran with Post Traumatic Stress Disorder ("PTSD"), applied for a driver position with CRST. (Plaintiff's Statement of Additional Facts ("PAF") 1-5). It is also undisputed that Laferriere met all the pre-requisites for the position, including a commercial driver's license ("CDL") and a Department of Transportation ("DOT") medical card that he had received through CRST's medical examiner, and that CRST deemed him qualified. (PAF 6-7, 10, 41-42). Further, there is no dispute that CRST failed to hire him pursuant to its policy of not allowing service dogs on trucks and that CRST engaged in no interactive process with Laferriere. (PAF 48-52). After developing a policy allowing service dogs less than two weeks later, CRST never reached out to Laferriere to offer him a job. (PAF 72-81). Laferriere went to work for another long-haul trucking company and performed successfully. (PAF 42).

In the face of this evidence, CRST is now attempting to escape liability based on facts it first learned of during discovery (a.k.a., "after-acquired evidence"). CRST is attempting to use such evidence to claim that Laferriere had not been qualified when he applied for the job in 2015. This attempt will not work as a matter of law, as it is well-established that after-acquired evidence does not bar liability, but only acts to limit remedies.

Even if after-acquired evidence were relevant to an employee's qualifications at the time of a challenged decision, the evidence that CRST relies on would not entitle it to summary judgment. CRSTs medical examiner, chiropractor Jayne Kwiatkowski, testified in this lawsuit that ███████ ████████████████████████████████████████████████████████████████ ████████████████ she would not have issued him a DOT medical certificate pursuant to her practice of automatically disqualifying any driver ████████████████████ Kwiatkowski's disqualification standard is based on her faulty assumption ████████████████████████

1

████████████████████████████████████████████████████████████████████

█████████████. This is not true generally and not true with respect to Laferriere. Contrary to Kwiatkowski's assumption that ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████

Kwiatkowski's testimony does not entitle CRST to summary judgment for several reasons. First, whether Laferriere made any misrepresentations on his DOT form and whether ████████████ ████████████████████████████████████████████████████ are disputed issues of fact. Second, even if Kwiatkowski would not have issued Laferriere a DOT certificate, Laferriere could have appealed to an impartial specialist in psychiatry under the DOT appeal process, and a reasonable jury could conclude that an impartial specialist, with a proper understanding of ████████████████████████████████████ would have found him medically qualified to drive and would have issued him a DOT certificate. Third, CRST has not shown, as it must, that Kwiatkowski's automatic disqualification of anyone who ████████████ ████████████████████████ Fourth, CRST is impliedly raising a "direct threat" defense on which it has not met its burden of proof and which was not the basis for its refusal to hire Laferriere at the time.

CRST also argues that the ADA "does not apply" to Laferriere' s request to have his dog on the truck because his dog was not a service dog under Department of Justice regulations regarding service dogs in public places. CRST's argument is wholly without merit.

Finally, CRST argues that EEOC's claims of retaliation and interference should be dismissed. CRST does not dispute that Laferriere engaged in protected activity, and that it took adverse action against him by removing him from the hiring process. Defendants' argument that

EEOC cannot show causation because CRST's actual reason for the adverse actions was its illegal policy of refusing to allow service animals as a reasonable accommodation also lacks merit.

## I. CRST Cannot Use After-Acquired Evidence of Alleged Misrepresentations on Laferriere's DOT Medical Form to Challenge EEOC's Prima Facie Showing that Laferriere was Qualified for the Driver Job

CRST argues that evidence it first learned of more than two years after the employment decision at issue can be used to defeat liability by showing that Laferriere was not qualified for the job at issue when he applied. Case law is to the contrary – after-acquired evidence bearing on an individual's qualification for a job does not operate as a bar to liability, even where proving qualification is part of a plaintiff's prima facie case. Indeed, three courts have considered and rejected the precise argument CRST makes here, that a truck driver cannot show that he was a qualified individual under the ADA where after acquired evidence arguably shows that he would not have passed his DOT physical had he not made misrepresentations to the DOT medical examiner.

In *McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 356 (1995), the Supreme Court held that after-acquired evidence could not be used to avoid liability under the Age Discrimination in Employment Act. In that case, the employer attempted to avoid liability for terminating the plaintiff based on age by relying on evidence of misconduct that the employer discovered only after the employee was terminated. Even if the employee's misconduct would have justified termination, the Court held that the employer cannot rely on it as a legitimate non-discriminatory reason for the decision at issue. Rather, such evidence can only be used to limit certain remedies. *Id.* at 356, 362-63.

In holding that after-acquired evidence cannot be used to avoid liability, the *McKennon* Court was resolving a circuit split between the 4th, 6th, 8th and 10th Circuits which all had held that after-acquired evidence could operate as a bar to liability and the 3rd, 7th, and 11th Circuits which held that after-acquired evidence could not be used for such purpose. In rejecting the views of the 4th, 6th, 8th and 10th Circuits, the Supreme Court specifically referenced *Welch v. Liberty Machine Works, Inc.,* 23

3

F.3d 1403 (8th Cir. 1994), a disability discrimination case which held that after-acquired evidence of employee misrepresentation is a defense to liability if the misrepresentation was material to the employee's qualifications and the employer established that it would not have hired the employee had it known of the misrepresentation. 23 F.3d at 1404-1405, cited by *McKennon*, 513 U.S. at 356.

Consistent with *McKennon* and its rejection of the 8th Circuit's view of after-acquired evidence, courts have held that employers cannot escape liability, even in ADA or hiring cases such as this, by challenging an applicant's employment qualifications with after-acquired evidence. *See, e.g., Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) (in ADA case, after-acquired evidence that employee did not have a valid driver's license when a driver's license was required for the job does not bar liability); *Dare v. Wal-Mart Stores, Inc.*, No. 02-0001, 2003 U.S. Dist. LEXIS 8558, at *11, *14 (D. Minn. May 8, 2003) (in hiring case, after-acquired evidence that plaintiff made material misrepresentations on employment application that would have prevented her from being hired if the employer had known of the misrepresentations at the time of hire did not bear on plaintiff's *prima facie* showing that she was qualified); *Burkhart v. Intuit, Inc.*, No. CV-07-675, 2009 U.S. Dist. LEXIS 16328, at *33-34 (D. Ariz. Feb. 26, 2009) (in ADA hiring case, after-acquired evidence of plaintiff's misrepresentations on his resume and his felony conviction for fraud could not be used to try to defeat plaintiff's *prima facie* showing that he was a qualified individual with a disability). Consistent with the holding of these cases, the Appendix to the regulations implementing the ADA provides that "[t]he determination of whether an individual with a disability is qualified is to be made at the time of the employment decision." App. to 29 CFR § 1630.2(m).

Three cases, all brought under the ADA, have addressed and rejected Defendants' argument that after-acquired evidence of an alleged failure to disclose medical conditions on a driver's DOT health history form bars a driver from showing that he was qualified for the driver position. Consistent with *McKennon*, each case held that the after-acquired evidence operated only to limit

available remedies. *Seegert v. Monson Trucking, Inc.,* 717 F. Supp. 2d 863 (D. Minn. 2010); *Ambrose v. J.B. Hunt Transp., Inc.*, No. 3:12-cv-01740, 2014 U.S. Dist. LEXIS 18361, at *68 (D. Or. Feb. 13, 2014); *Stark v. Harrt Transp. Sys.*, 37 F. Supp. 3d 445, 491 (D. Me. 2014).

In *Seegert*, an ADA termination case from within this Circuit, Monson argued that Seegert could not prove that he was qualified for the truck driver position he held because he failed to disclose his diagnosis of alcoholism on his DOT physical form. Defendant argued that his alcoholism rendered him medically unqualified to drive a truck and therefore, "he would not have obtained [a DOT certification] had he not made misrepresentations on his health history forms." 717 F. Supp. 2d at 869. The court held that the misrepresentations, which were revealed during discovery were "'after-acquired evidence' that cannot support summary judgment in Monson's favor." *Id.* at 869-870.

Similarly, in *Ambrose*, during discovery, J.B. Hunt discovered that Ambrose had provided false information on his DOT health history form by answering "no" to having cardiovascular conditions and "no" to prior heart surgery, when in fact he had both. The court held that because the heart conditions as well as the misrepresentations were after-acquired evidence, they did not affect the plaintiff's prima facie case. *Ambrose*, 2014 U.S. Dist. LEXIS 18361, at *68. In *Stark*, the Defendant found out during discovery that Stark had not disclosed to his DOT medical examiner several health conditions, which were in his medical records. Defendant's expert testified that "several of the conditions listed in Stark's medical records would have disqualified him from receiving his DOT certificate . . . [and] Stark's failure to disclose his full medical and mental health history invalidated the DOT certificate that he obtained . . ." Based on these facts, the defendant argued that it was entitled to summary judgment. The court disagreed, citing *Seegert*. 37 F. Supp. 3d at 490-491.

## II. Even if After-Acquired Evidence Could be Considered, Disputed Issues Would Preclude Summary Judgment on the Basis of Laferriere's Qualifications

5

### A. Whether Laferriere Made Any Misrepresentations on His DOT Physical Form is Disputed

Defendant alleges that Laferriere made three misrepresentations: (1) ███████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

████ Laferriere testified that his DOT form was accurate, disputing each alleged misrepresentation. He testified that ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████ ECF No. 54-1, Defs.' Br., p. 5, fn 3).

These disputes preclude any conclusion that the alleged misrepresentations render Laferriere unqualified. A jury is entitled to credit Laferriere's testimony over that of Kwiatkowski, an interested witness who earns half of her income from CRST. (PAF 16).

### B. A Jury Could Find That Kwiatkowski's Testimony Does Not Establish that Laferriere was Unqualified

CRST claims that it is entitled to summary judgment based on Kwiatkowski's testimony that she would not have certified Laferriere to drive if ████████████████████████████. Her testimony is based on faulty assumptions about what it means to █████████████████ ██████████████████████████████████████████████████████████████ ███████████████████ neither of which is true.

Kwiatkowski testified that ██████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████ PAF 25). She further testified that, although not required by

6

DOT regulations, she automatically disqualifies anyone who has ███████████ ████████ (PAF 24).

Contrary to Kwiatkowski's unsupported assumptions, being ██████████████ ████████████████████████████████████████████ █ ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████

████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████

████████████████████████████████████████████████ ████████████████████████████████████████████████████████████



███ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████



8

### C. A Jury May Discredit Kwiatkowski's Testimony Because Her Alleged Practice of Automatically Disqualifying Anyone Who █████ ████ is at Odds with DOT Regulations and Guidance

Contrary to Kwiatkowski's alleged practice, mental or psychiatric disorders are not automatically disqualifying under DOT regulations. Rather, such disorders are disqualifying only if they are "likely to interfere with [the driver's ability] to drive a commercial motor vehicle safely." 49 CFR 391.45(b)(9). Such a determination necessitates an individual assessment. The Medical Examination Report form in existence in May of 2015 when Laferriere underwent his medical exam contains *Instructions to the Medical Examiner* ("*Instructions*"), which provide that a history of certain conditions may indicate the need for a more thorough examination by a medical specialist. (PAF 17).

With respect to mental disorders, the *Instructions* direct the examiner to see the *Conference on Psychiatric Disorders and Commercial Drivers.* (PAF 18). The *Conference Report* was compiled by "physicians, psychologists, and other scientists experienced in the care of people with mental disorders; the motor carrier industry; and DOT." (PAF 19). Like the *Instructions,* the *Conference Report* advises that it is often appropriate to consult with a psychiatrist. (PAF 20). Included in the *Conference Report* are *Guidelines for Examining Physicians* ("*Guidelines*") which state the following: "Recognizing the complexity of the task facing the non-psychiatrist physician in evaluating applicants who may have psychiatric disease, the panel developed a set of screening questions and observations for the initial evaluation (appendix C)." (PAF 21). The *Guidelines* direct the examining physician to determine whether, based on positive responses to the screening questions, to refer the applicant to a psychiatrist for evaluation. *Id.* A board-certified psychiatrist, Dr. Rebecca Van Horn, determined that she would have found Laferriere qualified to drive at the time of his initial application to CRST. (PAF 23).

Even though Kwiatkowski is a chiropractor and not a psychiatrist, she testified that if she had known that Laferriere █████████████ she would not have consulted with a psychiatrist, but would have disqualified him pursuant to her practice of automatically disqualifying anyone who █

9

████████████████ (PAF 23-26). Kwiatkowksi further testified that she requires a year to pass after a driver-applicant ████████████████ before she will consider him for DOT certification. (PAF 24). EEOC is not aware of any regulation or guidance that require or suggest a waiting period in connection with ████████████████████ and CRST has cited none. In rendering her opinion during this litigation that she would have automatically disqualified Laferriere, Kwiatkowski is acknowledging that she would not follow any suggestion in the *Conference Report* and in the *Guidelines for Examining Physicians* to consult with a psychiatrist, and she would not follow the *Guidelines'* screening protocol.

### D. A Reasonable Jury Could Conclude That Laferriere Would Have Been Qualified Pursuant to the Regulatory Appeal Process

Even if Kwiatkowski would have found him medically unqualified, Laferriere could have sought review by an impartial specialist in the field of psychiatry – a review process provided for by DOT regulations. A reasonable jury could conclude that an impartial specialist with a proper understanding of ████████████████████████████ would have found him medically qualified to drive. Certainly, CRST has not and cannot show that upon review, an impartial specialist would have agreed with Kwiatkowski, an interested witness who earns half her income from CRST and who misunderstands what it means to ████████████. Without proof that Laferriere would have been found unqualified upon appeal, CRST is not entitled to summary judgment.

Under 49 CFR § 391.47, a driver applicant may seek a determination by the DOT whether he meets the medical standards for a DOT medical certificate. He may seek such a determination where the physician for the carrier finds the driver not qualified and the driver applicant obtains an opinion from another physician that he is qualified. *Id.* At that point, the driver applicant and the motor carrier submit the issue to an impartial medical specialist in the field where the conflict arose and the specialist renders an opinion. If the carrier does not accept the specialist's opinion, the applicant may submit the issue to the DOT for a determination on whether the applicant meets the DOT medical qualifications. 49 C.F.R. §§ 391.47(a) and (b).

10

Pursuant to the appeal process, when a medical examiner for the motor carrier denies a DOT certificate, the driver can then obtain a second opinion. *See Stark*, 37 F. Supp. 3d at 492 (if carrier's DOT medical examiner would have disqualified Stark based on medical conditions which had not been disclosed, as the employer contends, the next step would have been for the driver applicant to see another DOT examiner to see if he could get a DOT certificate); *Gaspar v. DS Waters of America*, No. 11 C 7465, 2013 U.S. Dist. LEXIS 75311, at *16-18 (N.D. Ill. May 22, 2013) (In June 2009, the medical examiner for the motor carrier denied the driver applicant a DOT certificate but in August 2009, the driver received a DOT certificate from his family physician, and in March 2010, received a second DOT certificate from a third physician). Kwiatkowski herself testified that "[t]he appeal process is they can go to another doctor and have another evaluation." (PAF 39); *see also, Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 638 (8th Cir. 2003); *EEOC v. Celadon Trucking Services, Inc.*, No. 12-cv-00275-SEB-TAB, 2015 U.S. Dist. LEXIS 84639, at *83-85 (SD. Ind. June 30, 2015); *Gaspar*, 2013 U.S. Dist. LEXIS 75311, at *16-18; *Prado v. Continental Air Trans. Co., Inc.*, 982 F. Supp. 1304, 1308 (N.D. Ill. 1997). Nothing precludes a CRST applicant from having a medical exam from a doctor of their choosing. (PAF 39).

Because a reasonable jury could conclude that Laferriere would have participated in the appeal process and that another physician and an impartial expert ▮▮▮▮▮▮▮▮ may have found that his ▮▮▮▮▮▮▮▮ was ***not*** "likely to interfere with [his] ability to drive a commercial motor vehicle safely," CRST is not entitled to summary judgment based on Kwiatkowski's testimony that she would have disqualified him.

### E. CRST is Impliedly Raising a Direct Threat Defense on Which It Has Not Met its Burden of Proof

CRST is arguing, based on after-acquired evidence, that it cannot be held liable for its

failure to hire Laferriere because he ██████████████████████████ (ECF No. 54-1, Defs.' Br., p. 6). This amounts to a direct threat defense upon which CRST bears the burden of proof. *See EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007).

As the 8th Circuit has observed, the Supreme Court requires an individualized direct threat analysis based on the best objective medical evidence to protect individuals from discrimination based on stereotypes or unwarranted fear. *Id.*, *citing Bragdon v. Abbott*, 524 U.S. 624 (1988); *Sch. Bd. Of Nassau County, Fla. V. Arline*, 480 U.S. 273 (1987); *see also* 29 C.F.R. § 1630.2(r) (setting forth proof required for direct threat defense). Additionally, to prevail on a direct threat defense, the employer must have engaged in a direct threat analysis at the time of the adverse action. *See, e.g., Fahey v. Twin City Fan Co., Ltd.*, 994 F. Supp. 2d 1064, 1073-74 (D.S.D. 2014).

CRST cannot meet its burden. CRST's assertion that Laferriere was a direct threat to others is not based on an individual assessment done at the time of the challenged employment decision, but rather on its medical examiner's assumption that everyone ██████████████ is a risk to themselves or others. Her assumption is not based on objective medical evidence but on stereotypes and unwarranted fear.

**F. Automatically Disqualifying Applicants Who ████████████████████ is a Qualification Standard Not Justified by Business Necessity**

By endorsing Kwiatkowski's alleged practice of disqualifying anyone who ██████████████ ██, Defendant is using a qualification standard that it has not, and cannot, show is required by business necessity.

Under the ADA, it is unlawful to use "qualification standards . . . that tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard . . . as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6). There can be no question that the practice of disqualifying anyone who ████████████ screens out individuals with a disability.

12

Here, the qualification standard CRST is applying through its medical examiner is not a standard contained in, or required by, DOT regulations. *Cf. Albertson's v. Kirkinburg*, 527 U.S. 555, 570 (1999) (rejecting truck driver applicant's challenge to employer's visual acuity standard as an illegal qualification standard because the standard was contained in a regulation that was binding on the employer and contained "no qualifying language about individual determinations."). Because the qualification standard Kwiatkowski applies here by is not required by law, EEOC challenges CRST's use of the standard.

As with the direct threat defense, to meet the business necessity defense, a safety-related qualification must be based on current objective medical knowledge, not just individual opinion. *Verzeni v. Potter*, 109 F. App'x 485, 491-492 (3d Cir. 2004). In determining whether a qualification standard is consistent with business necessity, a jury "should consider the objective views of the medical experts." *Id.* at 493. As explained above, the objective views of experts convened by the DOT were that ███████████ are not automatically disqualifying and require an individual determination. Moreover, Kwiatkowski's opinion regarding the threat posed by persons who have ███████████ is based neither on a correct understanding of ███████████ nor any objective medical knowledge.

### III. CRST's Argument That Laferriere's Dog Was Not a Service Dog Prescribed by a Doctor Does Not Entitle Defendants to Summary Judgment

Defendants contend that the "ADA does not apply," (ECF No. 54-1, Defs.' Br., p. 12), to Laferriere's request to allow his dog on the truck because: (1) the letter he provided from Dr. Martin does not specifically state that his prescribed service dog will wake him from nightmares while working on a truck; (2) his dog is not a service dog but an emotional support animal and allowing emotional support dogs in public places is not required by the Department of Justice regulations implementing Titles II and III of the ADA (applicable to state and local government facilities and public

13

accommodations); and (3) waking him from nightmares while sleeping on the truck has nothing to do with driving. These arguments are meritless and do not entitle CRST to summary judgment.

As an initial matter, summary judgment with respect to Laferriere's request to have his dog on the truck should be denied based on CRST's failure to engage in the interactive process. As this Court has recognized, once an employee requests an accommodation, the employer must engage the employee in an interactive process to identify possible accommodations. *Harris v. CRST Expedited, Inc.*, No. 13-CV-119-LRR, 2014 U.S. Dist. LEXIS 165816, at *36 (N.D. Iowa Nov. 26, 2014). In the Eighth Circuit, "summary judgment is typically precluded when there is a genuine dispute as to whether the employer acted in good faith and engaged in the interactive process of seeking reasonable accommodations." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 953 (8th Cir. 1999); *see also Harris v. CRST*, 2014 U.S. District LEXIS 165816, at *39-40 (denying summary judgment, in part based on finding that there was a genuine dispute as whether defendant engaged in the interactive process in good faith).

Here, CRST recruiter Nichole Moreland originally told Laferriere that he could bring his dog if his brother acted as his trainer and co-driver. (PAF 48). Once it became clear that Laferriere's brother was not going to work for CRST, by its own admission, CRST did not engage in any efforts to try to accommodate Laferriere. (PAF 48, 50-52). Based on these facts, there is a genuine dispute whether CRST acted in good faith and engaged in the interactive process to identify reasonable accommodations for Laferriere. Accordingly, summary judgment should be denied on this basis, obviating the need to consider CRST's arguments regarding whether Laferriere's dog would have been a reasonable accommodation.

If the Court does consider CRST's arguments, none of them entitles CRST to summary judgment. First, whether an animal (a service dog, an emotional support dog, or any other animal) is required in any specific employment situation turns on a standard reasonable accommodation analysis

14

under Title I of the ADA, and not on whether the animal is allowed in public places under Titles II or III. *See, e.g., Clark v. Sch. Dist. Five of Lexington & Richland Counties*, 247 F. Supp. 3d 734 (D. S.C. 2017); *Alonzo-Miranda v. Schlumberger Tech. Corp.*, No. SA-13-CA-1057, 2014 U.S. Dist. LEXIS 191082 (W.D. Tex. Nov. 24, 2014); *Branson v. West*, No. 97 C 3538, 1999 U.S. Dist. LEXIS 7343 (N.D. Ill. May 11, 1999). Although it is immaterial whether Laferriere's dog met the Department of Justice's definition of a service animal, the fact is that the dog *did* meet the definition, as the dog is "individually trained to... perform tasks" for Laferriere, specifically to wake him from nightmares. (PAF 55); 28 CFR § 35.104; *Miller v. Ladd*, No. CV 08-05595, 2010 U.S. Dist. LEXIS 73050, at *13-14 (N.D. Cal. July 20, 2010) (a dog belonging to an individual with anxiety and PTSD trained to alert the individual to anxiety attacks and "sleep attacks" meets the service dog definition).

Second, CRST's argument that Dr. Martin's letter was insufficient because it did not specify that the service dog would wake Laferriere from nightmares on a truck is without merit. Neither the law nor CRST require such specificity from a doctor. Indeed, the whole purpose of the interactive process is for the employer and the employee together to identify the employee's precise limitations and potential reasonable accommodations. *See, e.g., Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (1996). If CRST wanted more specific information to substantiate the need for or effectiveness of the dog in waking Laferriere from nightmares, it should have asked Laferriere and/or Dr. Martin as part of the interactive process. *See id.* at 1135-1137 (the time to collect additional information from a doctor is during the interactive process). CRST admitted that Laferriere did not refuse to provide any information about his health condition or his request for accommodation that CRST asked him to provide. (PAF 56). Having not asked Laferriere for more information when he requested an accommodation, CRST cannot now argue that the case should be dismissed because it did not have enough or the right kind of information. *See Taylor v. Phoenixville Sch. Dist.* 174 F.3d 142, 161 (3d Cir. 1999). Moreover, the facts show that the actual letter Dr. Martin

wrote was sufficient for CRST's purposes. CRST's 30(b)(6) witness testified that a medical clearance letter need not be written specifically for the job nor reference long-haul truck driving; rather it is sufficient for the letter to describe generally that an employee or applicant uses a service animal. (PAF 57).

Third, in asserting that waking Laferriere from nightmares has nothing to do with driving, CRST construes too narrowly its duty to reasonably accommodate disabled employees. As case law recognizes, under 29 CFR § 1630.2(o)(iii), reasonable accommodations include making "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." *See Clark*, 247 F. Supp. 3d at 20; *Branson*, No. 97 C 3538, 1999 U.S. Dist. LEXIS 734, at *24. Because CRST drivers work in teams on twenty-two hour shifts where one person drives while the other sleeps, getting a decent night's sleep to allow the driver to be refreshed and alert for driving is a benefit and privilege of employment. (PAF 46). Because Laferriere's sleep is marked by disturbing nightmares, having a dog wake him when a nightmare begins is a reasonable accommodation that would have allowed him to enjoy the benefits and privileges enjoyed by others.

## IV. <u>CRST Retaliated Against Laferriere When It Refused to Allow Him to Proceed to Orientation and Failed to Hire Him When the Company Adopted a Service Dog Policy</u>

CRST argues that there is no evidence supporting EEOC's claim that CRST retaliated against Laferriere. On the contrary, the evidence of a prima facie case of retaliation is undisputed.

To state a claim of retaliation, there is no requirement that the affected person must be a qualified individual with a disability. *Heisler v. Metropolitan Council,* 339 F.3d 622, 632 (8th Cir. 2003). Rather, "[plaintiff] must prove that [he] engaged in a protected activity, suffered an adverse employment action, and that there is a causal connection between the two." *Heisler v. Metropolitan Council,* 339 F.3d 622, 632 (8th Cir. 2003). The Eighth Circuit recognizes that a request for

accommodation is protected activity. *Id.,* citing *Shellenberger v. Summit Bankcorp, Inc.,* 318 F.3d 183, 191 (8th Cir. 2003). On June 10, 2015, Laferriere requested permission to take his dog with him to orientation as what he called "a very reasonable accommodation." (PAF 58).

Similarly, there is no dispute about the adverse action. CRST refused to permit Laferriere to proceed to orientation as scheduled, or at any time over the next several months during which he remained in CRST's database as a driver applicant. (PAF 59, 62, 74-81). Beginning in June 2015, CRST also refused to engage in an interactive process and to hire Laferriere under that process once CRST adopted its service dog policy.

CRST argues that EEOC cannot show a causal connection between the request for the dog, and its refusal to allow Laferriere to complete the hiring process. Again, there is no dispute that the two happened simultaneously, and that the reason Laferriere was taken out of the hiring process was the request for the dog. (PAF 42, 62-63). *See, Harris v. CRST Expedited, Inc.,* 2014 WL 6686569 *14, 16 (close temporal proximity of request for leave and termination established causation of termination for prima facie case of retaliation).

However, CRST asserts that the failure to hire was because of its "no pet" policy, not because of the request for accommodation. Of course, the illegal, inflexible, "no pet" policy, was a reason for the failure to hire, although not one that was legitimate and non-discriminatory. However, that reason disappeared within two weeks of CRST's first adverse action against Laferriere. Following additional complaints about the refusal to allow service animals on trucks, CRST amended the policy in an attempt to bring it into conformance with the ADA. (PAF 65-66). By no later than June 25, 2015, CRST was implementing the new policy. (PAF 66). Yet CRST made no attempt to contact Laferriere, to engage in the interactive process, or to reschedule his orientation, and certainly did not offer to hire him though CRST agrees that he was qualified and

17

should have been approved under the policy. (PAF 41-42). From June 25, 2015 to the present, CRST has granted at least 23 requests for a service or emotional support animal. (PAF 72).

Indeed, even after receipt of his charge of discrimination in August, his call to Nicole Moreland in November, and his new application in March 2016, CRST classified Laferriere's status in its driver database as "do not contact." (PAF 78-80).[2] This pattern of behavior, is an example of additional protected activity (Laferriere filing an EEOC charge) followed by a continued adverse action (CRST's failure to complete the hiring process even under the new service dog policy). Another District Court in this Circuit has recognized that an ongoing failure to accommodate is evidence of a causal connection between earlier protected activity and a subsequent and ongoing adverse action. In *Stockton v. Nw. Airlines, Inc.,* 804 F. Supp. 2d 938, 952 (D. Minn. 2011), the court found sufficient evidence of a causal connection between a requested accommodation and a termination two years later where the "inevitable road to termination" followed from "[the employer's] failure to accommodate and placement of [the employee] on layoff status." *Id.* In this case, CRST's decision not to move Laferriere to orientation and CRST's repeated failure to engage in an interactive process with him under their new policy led inevitably to their failure to hire him, both before and after they developed the service dog policy.

CRST's reliance on *Hill v. Walker,* 737 F.3d 1209, 1219 (8th Cir. 2013), is misplaced. There the plaintiff was terminated ten days after requesting an accommodation. The Court distinguished *Heisler* which had held that on the limited record before it, temporal proximity of the request for accommodation and the adverse action was sufficient to state a claim. *Hill,* at 1219. However, unlike in this case, the employer in *Hill* did not reject the employee because of the request, but rather because the employer determined that she was unable to perform the essential functions of the job.

---

[2] CRST did not produce the March 2016 application or the database showing that Laferriere had been coded as "do not contact" until after the close of discovery.

Here, in contrast, CRST admits that CRST believed that Laferriere was qualified for the job at issue. (PAF 41-42). Similarly, the decision in *Kelleher v. Wal-Mart Stores, Inc.,* 817 F.3d 624, 634 (8th Cir. 2016) is distinguishable from this case. There the employer had attempted numerous accommodations, and had engaged extensively in the interactive process. Here, there is no doubt that CRST failed to engage in any process with Laferriere and did not attempt any accommodations. EEOC respectfully submits that there is a factual question, and that it would be inconsistent with the governing law in this Circuit to take from the jury the question whether Laferriere' s request for accommodation was a motivating factor in CRST's failures to advance him to orientation, to consider him under the service dog process, and to hire him at any time after he made the request.

CRST also argues that EEOC's claim of interference with Laferriere' s rights and protections under the ADA by pressuring him to leave his dog at home and refusing to provide a reasonable accommodation is without evidentiary support. (Defs.' Br., p. 13). Again, the facts supporting the claim are largely undisputed.

The elements of an interference claim under Section 503(b) (interference) are virtually the same as those for 503(a) (retaliation). To prove an interference claim, a plaintiff must demonstrate that (1) he engaged in activity statutorily protected by the ADA; (2) He was engaged in the exercise of ADA protected rights; (3) the defendant coerced, threatened, intimidated, or interfered on account of his protected activity; and (4) the defendant was motived by an intent to discriminate. *Bayer v. Nieman Marcus Grp., Inc.,* 2018 WL 24427787, at * 9 (N.D. Cal. May 30, 2018), quoting *Flakes v. Peoria Sch. Dist. No. 150,* 872 F.3d 545, 550-51 (7th Cir. 2017). Here it is undisputed that Laferriere engaged in protected activity by requesting an accommodation; that he was acting pursuant to the ADA; that Schneider told him he could not continue in the hiring process unless he agreed to leave his dog at home, and that the reason for Schneider's action was the request for accommodation.

Case 1:17-cv-00129-LRR   Document 68   Filed 07/06/18   Page 21 of 22

Finally, CRST argues that EEOC would not be entitled to compensatory or punitive damages for Laferriere under 42 U.S.C § 12203. CRST is correct that the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b) which expanded the remedies available under Title VII, does not explicitly include Title V of the ADA, and that courts have split on whether such damages are precluded for retaliation and interference claims under the ADA. *See, Harms v. City of North Platte,* 2017 WL 6501848, at *2 (D. Neb. Dec. 19, 2017). The Eighth Circuit has not resolved the issue. EEOC respectfully submits that it would be premature for this Court to decide the issue now. The appropriate remedy is immaterial to whether the evidence supports the retaliation claim. CRST does not argue that the case would be moot, and if EEOC can prove its claim of retaliation, and its claim that Laferriere was a qualified individual within the meaning of the ADA, Laferriere will be entitled to reinstatement, back pay and interest.

## CONCLUSION

For the foregoing reasons, EEOC respectfully asks the Court to deny CRST's motion for summary judgment in its entirety.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

/s/ Leslie N. Carter
Leslie N. Carter
Trial Attorney, IL Bar No. 6311023
EEOC Milwaukee Area Office
310 West Wisconsin Avenue, Suite 500
Milwaukee, WI 53203
(414) 297-4188 (Office)
leslie.carter@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2018, the foregoing Brief in Opposition to Defendants' Motion for Summary Judgment was filed using the Court's CM/ECF system. /s/Leslie N. Carter

20