**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

          Plaintiff,

vs.

CRST INTERNATIONAL, INC.; and
CRST EXPEDITED, INC.,

          Defendants.

No. 17-cv-129-CJW-KEM

**ORDER**

_____

### TABLE OF CONTENTS

I.     BACKGROUND ..................................................................... 2

II.    MOTION TO AMEND ANSWER.............................................. 5

III.   MOTIONS TO STRIKE ........................................................ 12

      A.     Applicable Law................................................ 14

      B.     Conciliation Letter ........................................... 15

           1.    Waiver of Confidentiality ........................... 17

           2.    Federal Rule of Evidence 408 ..................... 20

      C.     Defendants' Supplemental Summary Judgment Brief................. 20

IV.   MOTIONS FOR SUMMARY JUDGMENT .................................. 24

      A.     Summary Judgment Standard .............................. 24

      B.     Substantive Law............................................. 26

      C.     Discussion.................................................. 27

           1.    Discrimination.................................... 28

           2.    Retaliation and Interference...................... 30

           3.    Damages and Jury Demand ...................... 32

V.     CONCLUSION................................................................. 37

This matter is before the Court on a multitude of motions: 1) cross motions for summary judgment (Docs. 54, 84); 2) plaintiff's timely filed Motion to Strike Pages 69-70 of CRST's Supplemental Appendix in Support of CRST's Motion for Summary Judgment As Well As Any Related Argument and Responses to EEOC's Additional Facts[,] Which Cite to or Reference Pages 69-70 of CRST's Supplemental Appendix and to Bar Any Future Submission of "Anything Said or Done During Conciliation" (Doc. 77); 3) plaintiff's timely filed Amended Second Motion to Strike Documents and Arguments Related to "Anything Done or Said During Conciliation" and Motion for Protective Order Barring Any Future Submission of the Same (Doc. 102); and 4) defendants' Amended Motion for Leave to File Amended Answer (Doc. 93). The parties timely briefed each of the motions and provided supplemental briefing in accordance with Court order.

The Court's rulings are as follows: 1) defendants' motion for summary judgment (Doc. 54) is **granted in part and denied in part**; 2) plaintiff's motion for partial summary judgment (Doc. 84) is **denied**; 3) plaintiff's first motion to strike (Doc. 77) is **granted**; 4) plaintiff's second motion to strike (Doc. 102) is **granted in part and denied in part**; and 5) defendants' motion to amend their answer (Doc. 93) is **denied**. The Court's analysis will first address defendants' motion to amend (Doc. 93) before turning to the motions to strike (Docs. 77, 102) and will conclude with the cross motions for summary judgment (Docs. 54, 84).

## I.     BACKGROUND

The Equal Employment Opportunity Commission ("plaintiff") brought this action against defendants under Titles I and V of the Americans with Disabilities Act ("ADA") and Title I of the Civil Rights Act. (Doc. 19, at 1). As set forth in plaintiff's Amended Complaint, plaintiff brought this action

to correct unlawful employment practices on the basis of disabilities and to provide appropriate relief to [L.L.], a qualified individual with a disability who was adversely affected by such practices. As alleged with greater particularity below, Defendants refused to hire [L.L.] as a truck driver because of his disabilities, refused to accommodate his disabilities, and retaliated against him when he requested the use of a prescribed emotional support/service dog as an accommodation for his Post-Traumatic Stress Disorder and mood disorder.

(*Id.*). Plaintiffs further alleged that all conditions precedent to filing suit in the instant case had been fulfilled. (Docs. 19, at 4; 42, at 4-5).[1]

Plaintiff alleges that L.L. is a qualified individual under the ADA and that L.L suffers from impairments that are considered disabilities under the ADA, including post-traumatic stress disorder and mood disorder, which affect plaintiff's major life activities, including sleep, brain function, and ability to think. (Doc. 19, at 4). Plaintiff further alleges that L.L.'s psychiatrist "prescribed an emotional support/service animal to assist [L.L.] in coping with his disabilities and to maintain appropriate social interactions and workplace functions." (*Id.*).

L.L. applied for employment as a commercial truck driver with defendants and, at some point during the employment process, requested that he be permitted to have his dog on the truck with him while driving so that the dog could provide emotional support. (*See* Docs. 19, at 4-5; 42, at 6). Plaintiff alleges that defendants denied L.L.'s request to have his dog accompany him while driving, that L.L.'s request was a request for a reasonable accommodation, and that defendants refused to hire L.L. as a result of L.L.'s disabilities and need for an accommodation. (Doc. 19, at 4-5).

---

[1] As is explained below, the parties contest whether all conditions precedent were satisfied prior to plaintiff bringing suit. Defendants are, however, bound by their admission that all conditions precedent were satisfied. The Court's analysis on this issue is set forth in detail *infra*.

Plaintiff asserts that defendants' refusal to hire L.L. constituted a violation of L.L.'s civil rights and the rights granted to L.L. under the ADA. As such, plaintiff filed suit requesting that the Court:

A.     Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against qualified individuals with disabilities who use a service animal or emotional support animal.

B.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendants to make [L.L.] whole by offering him employment as a truck driver.

D.     Order Defendants to make [L.L.] whole by providing appropriate back pay with prejudgment interest in amounts to be determined at trial, and any other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

E.     Order Defendants to make [L.L.] whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in this Complaint in amounts to be determined at trial.

F.     Order Defendants to make [L.L.] whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described in this Complaint, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.     Order Defendants to pay [L.L.] punitive damages for its malicious and reckless conduct, as described herein, in amounts to be determined at trial.

H.     Grant such further relief as the Court deems necessary and proper in the public interest.

I.     Award [plaintiff] its costs in this action.

(Doc. 19, at 6-7).

## II.  MOTION TO AMEND ANSWER

The deadline to amend pleadings in this case was initially September 18, 2017. (Doc. 29, at 1).  After plaintiff filed its amended complaint, defendants sought an extension of the deadline to file a responsive pleading.  (Doc. 39).  The Court granted that motion and set November 29, 2017, as the deadline for defendants "to file their Answer or otherwise plead in response to the Amended Complaint."  (Doc. 40). Defendants timely filed an answer on November 29, 2017.  (Doc. 42).  On October 9, 2018, defendants filed their Amended and Substituted Motion for Leave of Court to File Amended Answer and appended their amended answer to the motion.  (Docs. 93; 93-1). Because the time for amending pleadings has expired, permitting defendants to amend their answer would require a modification of the scheduling order.  The Court will therefore treat defendants' motion as one for modification of the scheduling order.

In support of their motion to amend their answer, defendants state that plaintiff produced discovery on April 2, 2018, and that the discovery contained certain of L.L.'s medical records, which, defendants argue, show that L.L. was not qualified to be a truck driver for defendants.  (Doc. 93, at 1-2).[2]  Defendants further argue that L.L. was deposed on May 18, 2018, which further alerted defendants to L.L's disqualifying medical history.  (Doc. 108, at 2).  As will be discussed in greater depth *infra*, this alleged showing led defendants to argue that all conditions precedent to filing the instant suit were not satisfied prior to plaintiff bringing suit.  (Docs. 93; 108, at 3-4).  In their Answer to Amended Complaint, however, in response to plaintiff's assertion that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled," defendants "[a]dmitted that ADA's required pre-suit process was completed before this lawsuit was filed, but denied that there is any factual or legal basis for the lawsuit."  (Doc. 82, at 4-

---

[2] A number of filings appear on the docket only in redacted form.  Where this is the case, the parties have provided the Court with the unredacted filings for *in camera* review.

5). Defendants now seek to amend their Answer to Amended Complaint to "[d]en[y]" that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled." (Doc. 93-1, at 5).

When, as here, leave of court is required to amend a pleading, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Federal Rule of Civil Procedure 16(b)(4), however, provides that "[a] schedule may be modified only for good cause and with the judge's consent." Further, Federal Rule of Civil Procedure 6(b) provides that where a party seeks to extend a deadline that has already passed, the Court may extend the deadline upon a showing of good cause, "if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b).

"The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). "[I]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." *Id.* (emphasis in original) (citations and internal quotation marks omitted). "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." *Id.* "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Id.* (citation and internal quotation marks omitted). "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [the Court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Id.* at 717 (citation omitted).

As the deadline to amend pleadings was in 2017—well before defendants' motion to amend was filed—the Court is bound by *Sherman*'s requirement that defendants show good cause for modification of the deadline to amend pleadings. Defendants assert that good cause exists to permit the amendment because defendants could not have known of

the basis for the amendment until April or May 2018, when defendants contend that they learned that plaintiff allegedly failed to investigate L.L.'s allegations of discrimination. (Docs. 93, at 1-2; 108, at 5). Specifically, defendants assert that plaintiff never investigated L.L.'s medical history prior to filing suit and, as a result, defendants argue that plaintiff did not attempt to conciliate the instant claims in accordance with the ADA's requirements. (Doc. 93, at 2). Defendants further assert that they first became aware of plaintiff's alleged failure to investigate and conciliate when defendants propounded requests for production that sought L.L.'s medical records and plaintiff had to request those records from the medical providers directly. (*Id.*, at 1-2). Had plaintiff investigated the claims prior to bringing suit, defendants argue, plaintiff would have had those medical records in plaintiff's possession at the time the requests for production were propounded. (*Id.*).

In response, plaintiff contends that at the time defendants filed their answer, defendants should have known of the basis for defendants' argument that all conditions precedent had not been satisfied. (Doc. 105, at 14-15). Plaintiff bases this contention on defendants having received plaintiff's pre-suit investigation file on June 30, 2017, approximately five months prior to the date on which defendants filed their answer. (*Id.*). Plaintiff does not argue that it received or reviewed the subject medical records prior to defendants requesting the records during discovery. To the best of the Court's understanding, plaintiff's argument is that the absence of L.L.'s medical records in the pre-suit investigation file should have alerted defendants to the potential availability of the conditions precedent defense. As such, the Court understands plaintiff to argue that defendants should have been made aware of this defense on June 30, 2017, at the latest.

The Court disagrees with plaintiff's argument that the absence of L.L.'s medical records in the pre-suit investigation file should have alerted defendants to the potential existence of the conditions precedent defense. Defendants' argument is that the medical

records revealed that L.L. had a psychiatric history that would have disqualified L.L. from driving commercially, but that plaintiff was unaware of this psychiatric history because plaintiff failed to adequately investigate L.L.'s claims of discrimination. (Doc. 93, at 1-2). Further, defendants contend that they were made aware of the alleged lack of an investigation only upon receiving L.L.'s medical records, which revealed the existence of L.L.'s psychiatric history. (*Id.*). Without these records, defendants argue that they had no reason to suspect any deficiencies in the investigatory process. (*Id.*, at 2).

The Court finds that defendants have shown good cause for failure to move to amend their answer prior to May 18, 2018, the date on which defendants deposed L.L. regarding L.L.'s medical records. (Doc. 108, at 2). This case presents a scenario in which defendants could not have known of the full relevance of the medical records without having had the opportunity to view the records themselves. That is, defendants may have been aware that L.L. had previously received psychiatric treatment, but in the absence of the records, defendants could not have been aware that the records allegedly contained information that would have shown that L.L. was not qualified to be a commercial driver.

Further, until defendants received the records and this information was revealed, defendants could not have known that plaintiff allegedly failed to investigate L.L.'s claim. It was only upon receiving the records that defendants were able to determine that the records were materially relevant to L.L.'s qualification as a driver and that plaintiff had not previously sought the information contained therein. As such, the Court finds that defendants have established good cause for not bringing their motion to amend prior to the date on which the records were produced. The Court further finds that defendants would have been justified in waiting to bring their motion until after deposing L.L. and receiving elaboration and clarification regarding the records. The Court therefore finds

that defendants have shown good cause for not bringing their motion prior to May 18, 2018.

Defendants have offered no explanation, however, for the nearly five-month gap between L.L.'s deposition on May 18, 2018, and October 8, 2018, the date on which defendants brought the instant motion. (Docs. 90, 93, 95).[3] Instead, defendants argue that they exercised due diligence in raising the defense by raising plaintiff's alleged "non-compliance with the ADA's pre-suit requirements" in defendants' reply brief in support of their motion for summary judgment. (Doc. 108, at 3-4). The reply brief was filed on July 17, 2018—two months after defendants deposed L.L. (Doc. 75).[4] Defendants' argument essentially amounts to an assertion that the delay in bringing the motion to amend was only two months and that by acting within two months of becoming aware of the potential applicability of the defense, defendants acted diligently. The Eighth Circuit Court of Appeals has, however, rejected this rationale.

In *Sherman*, the Eighth Circuit found that raising a defense for the first time during summary judgment briefing in spite of having had the information forming the basis for

---

[3] Defendants first brought their motion to amend on October 8, 2018. (Doc. 90). That motion was stricken from the docket (Doc. 95), and a redacted version of the same motion was filed on October 9, 2018 (Doc. 93). The motion filed on October 9, 2018, is identical to the motion filed on October 8, 2018, aside from certain information being redacted in the later filing. For purposes of calculating time in this section, the Court will consider the motion to have been filed on October 8, 2018.

[4] On July 13, 2018, defendants filed a motion to file their overlength reply brief. (Doc. 72). That same day, defendants filed their overlength reply brief and accompanying attachments. (Doc. 73). On July 17, 2018, the Court granted defendants' motion to file their overlength reply brief. (Doc. 74). As such, even though the proposed overlength brief appeared on the docket on July 13, 2018, the brief was not considered docketed until the Court granted the motion for overlength brief. The slight lapse in time that occurred between the date on which defendants filed their motion to file an overlength brief, and the date on which the Court granted the motion is immaterial to the Court's present analysis.

the defense does not indicate diligence, but, rather, may indicate a lack of diligence. 532 F.3d at 717-18. Further, the facts in the instant case are similar to those in *Sherman*, in which the Eighth Circuit explicitly found that the timeline of the relevant pleadings "provide[d] no support for a finding of good cause." *Id.* at 717. The Eighth Circuit set forth the timeline as follows:

> Even though preemption is a purely legal defense based on readily available federal law, [movant] waited to seek leave to plead the affirmative defense until two and a half years after the suit was filed; a month after the close of discovery; a month after it raised the defense in its summary judgment motion; almost eighteen months after the deadline for amending pleadings; and eight full months after it was actually aware of the preemption defense's applicability.

*Id.* Here, defendants waited to seek leave to amend their answer until more than one and one-half years after the suit was filed (Doc. 1); four months after the close of discovery;[5] three months after defendants contend they raised the defense in their summary judgment reply brief; one year after the deadline to amend pleadings; and five months after defendants should have become aware of the applicability of the defense.

Although the timeline in the instant case is not identical to the timeline in *Sherman*, it is similar enough that the Court cannot ignore *Sherman*'s dictate that a district court abuses its discretion when it permits a party to amend its answer such a lengthy time after the deadline to amend pleadings has passed. Here, defendants have not offered any explanation for the five-month delay between the date on which they should have become

---

[5] The Court notes that discovery was reopened to allow two witnesses to be deposed on a narrow set of topics. (Doc. 78, at 4-9). The motion to reopen discovery, however, was filed after defendants should have become aware of the applicability of the conditions precedent defense. (*See* Doc. 52). Further, the limited purpose for which discovery was reopened has no bearing on the conditions precedent defense. Thus, for purposes of assessing defendants' diligence and ability to show good cause, the Court will treat June 1, 2018, as the deadline for completion of discovery. (Doc. 46).

aware of the applicability of the defense and the date on which they moved to amend their answer. Where such a significant gap is present and a party has failed to make a showing of good cause, binding precedential authority precludes this Court from permitting a defendant to amend its answer. Likewise, defendants have not argued that they failed to bring their motion sooner due to excusable neglect, and the Court finds that no such excusable neglect is present here.

Aside from the slight timing differences indicated above, the Court notes that the *Sherman* court was addressing a motion to amend an answer to assert an affirmative defense. 532 F.3d at 712. In a Title VII action, such as this one, plaintiff is tasked with asserting that all conditions precedent to the suit have been fulfilled. *See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (declining to offer an opinion on whether the defense of failure to satisfy conditions precedent in the Title VII context is an affirmative defense, but stating that conditions precedent defenses "may" be affirmative defenses); *see also EEOC v. Eagle Iron Works*, 367 F. Supp. 817, 822-23 (S.D. Iowa 1973) (indicating that the plaintiff in a Title VII action must affirmatively plead that all conditions precedent have been satisfied). As such, a plaintiff must plead that all conditions precedent have been satisfied as part of plaintiff's *prima facie* case. Although the Eighth Circuit has declined to comment on whether failure to satisfy conditions precedent is an affirmative defense, the Court will assume, *in arguendo*, that such a failure is not an affirmative defense. Assuming as such, *Sherman* is distinguishable to the extent it considered a motion to amend to assert an affirmative defense. Even assuming such a distinction exists, this slight deviation in the facts is not material and does not lend support to defendants' untimely motion to amend.

Finally, defendants assert that each of the multitude of cases plaintiff cites in its resistance is distinguishable in some material respect. (Doc. 108, at 6). Without reaching

the merits of whether defendants' assertion is accurate,[6] the Court finds that *Sherman* instructs the Court to deny defendants' motion. Significantly, although defendants urge that *Sherman* is distinguishable from the instant case, defendants do not point to a case that would support granting defendants' motion in light of the five-month lapse between the date of L.L.'s deposition and the date on which defendants filed their motion. The Court finds that the slight differences in timing between the instant case and *Sherman* are not material enough to meaningfully distinguish *Sherman*. Defendants' motion to amend their answer (Doc. 93) is, therefore, **denied**.

Defendants' admission in their answer that the "ADA's required pre-suit process was completed before this lawsuit was filed" (Doc. 84, at 4-5), will be treated as a binding admission, including during the Court's consideration of the pending motions for summary judgment. *Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314-15 (8th Cir. 1990) (finding that admissions in a complaint are binding even where the admitting party later produces evidence contrary to those admissions and, further, treating the admissions as binding when considering summary judgment). In light of this binding admission, the Court finds that defendants are not entitled to summary judgment based on the argument that all conditions precedent to the instant suit were not satisfied prior to plaintiff filing its complaint. No additional discussion of the conditions precedent defense is necessary herein.

### III.   MOTIONS TO STRIKE

Plaintiff has filed two motions to strike that are currently pending before the Court. (Docs. 77, 102). Both motions are similar in nature and will be considered together. The Court previously entered an Order directing the Clerk of Court to seal the pages at issue until such time as the Court could rule on the pending motions to strike. (Doc. 80).

---

[6] *Sherman*, which the Court discusses extensively, is one of the cases that defendant argues is distinguishable from the instant case. (*See* Doc. 108, at 6).

Plaintiff has also requested a protective order, but plaintiff has not provided the Court with a proposed order or with proposed terms to be included or addressed in the order. Absent such guidance, the Court declines to enter a protective order. Plaintiff's request for a protective order, as submitted, is **denied**. Plaintiff may meet and confer with defendants then either file a new motion for a protective order, which contains proposed terms, or file a new motion for a protective order and submit a proposed order to the Court simultaneously therewith. The Court's preference is for the parties to meet and confer prior to filing a joint motion for a protective order and submitting a joint proposed protective order contemporaneously therewith.

The motions contain two categories of materials that plaintiff seeks to have stricken. First, plaintiff seeks to have stricken certain pages contained in defendants' appendices to defendants' summary judgment briefing. (Docs. 77-1, at 1-2; 102-1, at 2-3). The pages at issue allegedly "contain[ ] documents describing things that were said and done during conciliation negotiations." (Docs. 77-1, at 1-2; *see also* 102-1, at 2-3). Second, plaintiff seeks to have stricken "any related argument or references to [the aforementioned documents] in [defendants' briefs]." (Docs. 77-1, at 2; *see also* 102-1, at 3). In plaintiff's second motion, plaintiff identified a specific section of one of defendants' briefs that plaintiff seeks to have stricken. (*See* Doc. 102-1, at 3 (identifying Section I.B.2 of Docket Numbers 98 and 99 as being at issue)). In support of its motions, plaintiff argues that Title 42, United States Code, Section 2000e-5(b) bars defendants from relying on the subject materials because the materials concern things said or done during conciliation. (Docs. 77-1; 102-1). Plaintiff further asserts that the materials must be stricken from the record, not merely sealed. (Doc. 109, at 2).

## A.  Applicable Law

Title 42, United States Code, Section 2000e-5(b)[7] provides, in relevant part, as follows:

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved . . . alleging that an employer . . . has engaged in an unlawful employment practice, the [Equal Employment Opportunity] Commission shall serve a notice of the charge . . . on such employer . . . and shall make an investigation thereof.  . . . If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commissioner shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.  Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.

The United States Supreme Court has opined on whether descriptions of the conciliation process should be stricken from the record:

> The [d]istrict [c]ourt held that it could not strike from the record descriptions of the conciliation process because they spoke to whether the EEOC had made a "sincere and reasonable effort to negotiate."  The [district] court thus failed to give effect to the law's non-disclosure provision.  And in so doing, the court undermined the conciliation process itself, because confidentiality promotes candor in discussions and thereby enhances the prospects for agreement.  As this Court has explained, "[t]he maximum results from the voluntary approach will be achieved if" the parties know that statements they made cannot come back to haunt them in litigation. *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 599, n.16 (1981).

*Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1655 (2015) (last alteration in original) (citation omitted).

---

[7] The Court notes that the motions to strike are being brought pursuant to the aforementioned statute and are not being brought pursuant to Federal Rule of Civil Procedure 12(f).

Other courts have interpreted the Supreme Court's *Mach Mining* decision to mean that absent the written consent of all parties involved, the content of conciliation communications cannot be used as evidence in a proceeding subsequent to conciliation discussions. *See, e.g.*, *EEOC v. Amstead Rail Co., Inc.*, 169 F. Supp.3d 877, 884 (S.D. Ill. 2016). This rationale has been applied to pleadings as well as to evidence. *Id.* Similarly, the Fifth Circuit Court of Appeals has held that "a distinction exists between factual materials related to the merits of the [EEOC's] charge [against a defendant] and proposals and counter-proposals of compromise made by the parties during the EEOC's efforts to conciliate. . . . Disclosure of the former is allowable, but disclosure of the latter is not." *EEOC v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (alterations, citations, and internal quotation marks omitted).

### B.    *Conciliation Letter*

First, plaintiff seeks to have stricken a letter that appears to have been authored as an attempt to propose terms of conciliation. This letter was included in defendants' appendix to their reply in support of their motion for summary judgment (Doc. 73-2[8]) and in defendants' appendix to their supplemental summary judgment brief (Doc. 98-1[9]). Plaintiff seeks to have it stricken from the docket in both of the aforementioned places. Defendants, in response, argue that the letter is essential to disproving one of plaintiff's allegedly undisputed facts. (Doc. 79, at 2-3). Although the Court understands defendants' predicament in being unable to disprove a fact without using the letter for its evidentiary value, the statute explicitly provides that nothing said or done during

---

[8] When the Court sealed the letter, the letter was omitted from the appendix and redocketed at Docket Number 73-3.

[9] When the Court sealed the letter, the letter was omitted from the appendix and was redocketed at Docket Number 98-3.

conciliation may be "used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b).

In holding that the letter must be stricken, this Court's holding is in line with that of the Fifth Circuit's in *Philip Services*. In *Philip Services*, the Fifth Circuit held that conciliation proposals and counter proposals between parties may not be disclosed in a later proceeding. 635 F.3d at 167. The subject letter is just such a proposal or counter proposal and, therefore, may not be disclosed. Notably, the letter is not being offered to show that plaintiff did not engage in a meaningful attempt at conciliation, nor is the letter being used in support of defendants' argument that plaintiff did not undertake an investigation prior to filing suit.[10]

Further, sealing the letter, as opposed to striking the letter entirely, would not serve the purpose of giving parties some degree of a guarantee that statements made during conciliation would not "come back to haunt them in litigation." *Mach Mining*, 135 S. Ct. at 1655. *See also U.S. EEOC v. Phase 2 Inv. Inc.*, No. JKB-17-2463, 2018 WL 826526, at *8 (D. Md. Feb. 12, 2018) ("[F]iling [materials regarding conciliation] under seal would not alleviate the problem created by 42 U.S.C. § 2000e-5(b). Whether or not *the public* can view this material is not a dispositive issue. Only when all of the parties *to the conciliation* . . . agree can the material be published." (emphasis in original)). *But see EEOC v. U.S. Steel Corp.*, 877 F. Supp.2d 278, 289 (W.D. Pa. 2012) (holding that a court order sealing documents that discussed conciliation proceedings "cured" any dispute regarding whether the documents were improperly disclosed).

---

[10] The Court notes that the portion of defendants' brief, discussed *infra*, that plaintiff seeks to have stricken addresses whether plaintiff undertook an investigation and attempt to conciliate the charge prior to bringing suit. Although defendants do, in one location, use the content of the letter to provide background for defendants' argument that plaintiff did not investigate the charge and attempt to conciliate the charge, the Court is satisfied that this information merely provides context and is not material to whether plaintiff conducted an investigation and attempted to conciliate the charge. (*See* Doc. 99, at 11).

Indeed, defendants argue only that the subject materials should not be stricken. Defendants do not argue that sealing the materials would be an appropriate substitute for striking the materials. Absent authority indicating otherwise, the Court is bound to disregard the letter as evidence and to strike the letter from the docket.

### 1. Waiver of Confidentiality

Defendants argue that plaintiff waived the protection of confidentiality by being the first party to raise the issue of what transpired during conciliation. (Doc. 79, at 4-6). Specifically, defendants contend that plaintiff's statement that defendants "never offered [L.L.] a job after changing its no-pets policy," amounted to an assertion that even during conciliation, defendants never offered L.L. a job. (*Id.*, at 4). Defendants argue that "[b]y making a statement that supposedly revealed what was said or not said during the conciliation process, [plaintiff] has waived conciliation confidentiality so that [defendants] could refute [plaintiff's] false statement and correct the record." (*Id.*). Defendants reason that if the Court grants plaintiff's motion to strike, the Court will be left only with plaintiff's statement that defendants never offered L.L. a job, and the Court will not have the benefit of evidence to the contrary, nor will defendants have an opportunity to refute plaintiff's statement that defendants never offered L.L. a job.

Defendants cite two cases in support of their argument that plaintiff waived confidentiality. Each of the two cases, however, is distinguishable. In *EEOC v. American Tool & Mold, Inc.*, the Middle District of Florida granted the EEOC's motion to disclose information regarding what was said and done during conciliation. *EEOC v. Am. Tool & Mold, Inc.*, No. 8:12-cv-2772-T-35EAJ, 2013 WL 12155446 (M.D. Fla. Nov. 26, 2013). In its motion, the EEOC sought permission to reveal confidential information in its brief in reply to the defendant's resistance to the EEOC's motion for summary judgment. In that case, the defendant argued that the EEOC disclosed confidential conciliation information in the EEOC's motion for summary judgment, and

that the EEOC "forced" the defendant to reveal confidential information in the defendant's resistance in order to refute the EEOC's disclosure. *Id.*, at *3. The district court, however, was unpersuaded and held that the defendant "could have simply moved to strike those portions of the motion it found objectionable." *Id.* The defendant declined to do so and, instead, revealed additional conciliation information beyond the information that the EEOC had already disclosed. By doing so, the defendant put the court in a position where "the [c]ourt [could not] resolve the conciliation defense without a full recitation of the facts related to it." *Id.* The district court indicated that the necessity of the court discussing the facts of what occurred during conciliation influenced the court's decision to permit the EEOC to further disclose conciliation information in its reply brief. *See id.*

Here, defendants argue that plaintiff improperly disclosed facts regarding conciliation and that defendants were forced to respond with additional facts regarding what occurred during conciliation. The Court understands defendants' argument that plaintiff disclosed facts concerning conciliation by stating that defendants did not offer L.L. a job, even during conciliation. Although this argument could have merit, the Court finds that the more proper course would have been for defendants to move to strike the contested material in plaintiff's brief rather than to disclose additional confidential information. As in *American Tool & Mold*, defendants did not do so. *American Tool & Mold* is distinguishable, however, when one considers whether this Court must engage in a discussion of the facts surrounding conciliation in resolving defendants' defense that plaintiff failed to engage in conciliation discussions.

The Court need not engage in such a discussion for two reasons. First, the Court is able to resolve the cross motions for summary judgment on bases other than defendants' conciliation defense and on bases other than plaintiff's assertion that defendants never offered L.L. a job. Thus, a discussion of the facts surrounding what occurred during

conciliation is unnecessary and, likely, improper. Likewise, the issue of whether defendants offered L.L. a job becomes immaterial based on the Court's rationale in deciding the motions for summary judgment. Second, based on the denial of defendants' motion to amend their answer, defendants are bound by the admission that all conditions precedent to the instant suit, including the statutory requirement that plaintiff attempt to conciliate the charges, were satisfied prior to plaintiff filing the complaint in the instant case. The Court therefore finds that *American Tool & Mold* is distinguishable and is not persuasive here.

Defendants also cite *EEOC v. Rockwell International Corp.*, 922 F. Supp. 118 (N.D. Ill. 1996), in support of their position that plaintiff waived confidentiality of the subject materials. In *Rockwell*, however, the district court was specifically called upon to determine whether the defendant was given sufficient pre-litigation notice of the conduct complained of such that the EEOC could properly bring suit. 922 F. Supp. at 120. The court found that it could consider the scope of the EEOC's conciliation efforts only for the narrow purpose of determining whether the EEOC had provided sufficient notice to the defendant prior to bringing suit. *Id.*

The situation in the instant case is distinguishable because, as discussed *supra*, defendants are bound by the admission that all conditions precedent to bringing the instant suit were satisfied prior to plaintiff filing its complaint. As a result, although *Rockwell* provides support for the notion that raising a conciliation issue could amount to a waiver of confidentiality, the *Rockwell* court did not consider whether such a waiver could occur where it has already been established that all conditions precedent have been satisfied. Moreover, *Rockwell* is an out of circuit case from 1996—long before the Supreme Court's admonition against revealing confidential information in the context of Section 2000e-5(b)—and is not binding on this Court. Further, as the Court has already noted, the materials sought to be stricken are not material to the Court's decision on the cross

motions for summary judgment and, therefore, defendants are not prejudiced by the materials being stricken.

### 2. *Federal Rule of Evidence 408*

Finally, defendants argue that the letter is admissible under Federal Rule of Evidence 408. (Doc. 79, at 6-7). The Court need not reach the merits of this argument. The Court has determined that pursuant to a federal statute, the letter may not be used as evidence. Even if the letter could be admitted into evidence under Rule 408, the statutory command prohibiting disclosure of the letter would prevail over a procedural rule to the contrary. *See* FED. R. EVID. 1101(e) ("A federal statute or a rule prescribed by the Supreme Court may provide for admitting or excluding evidence independently from these rules."). As such, plaintiff's motions to strike (Docs. 77, 102) are **granted** to the extent the motions seek to strike the letter from the docket in the two places in which the letter appears. The Clerk of Court is directed to strike from the docket the documents currently appearing at Docket Number 73-3 and Docket Number 98-3.

### C. *Defendants' Supplemental Summary Judgment Brief*

Next, plaintiff seeks to have the Court strike a portion of defendants' supplemental summary judgment brief because, plaintiff asserts, that portion of the brief contains improper references to things said and done during conciliation.[11] (*See* Doc. 102-1). The section of the brief at issue addresses whether plaintiff undertook an investigation prior to attempting conciliation. Defendants argue that plaintiff did not investigate the alleged misconduct at all and that absent an investigation, the conciliation process could

---

[11] The Court notes that there is a discrepancy as to which pages of defendants' brief plaintiff is seeking to have stricken. The pages identified by plaintiff do not match the page numbers containing Section I.B.2 of defendants' brief, which is the section sought to be stricken. (Doc. 102, at 2). The Court will construe plaintiff's motion as seeking to strike the entirety of Section I.B.2 and not seeking to strike material appearing in any other section of defendants' brief.

not have proceeded in a meaningful fashion. Thus, defendants reason, the conciliation process was meaningless.

The Supreme Court addressed this issue in *Mach Mining*:

> The statute demands . . . that the EEOC communicate in some way (through "conference, conciliation, and persuasion") about an "alleged unlawful employment practice" in an "endeavor" to achieve an employer's voluntary compliance. [42 U.S.C.] § 2000e-5(b). That means the EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of "reasonable cause." *Id.* Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result. And the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice. Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute. At the same time, that relatively barebones review allows the EEOC to exercise all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them. And such review can occur consistent with the statute's non-disclosure provision, because a court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.*, statements made or positions taken) during those discussions.

135 S. Ct. at 1655-56.

With one exception, the Court finds that the information contained in Section I.B.2 of defendants' supplemental summary judgment brief provides the Court only with general information regarding whether plaintiff attempted to conciliate, but does not disclose the parties' statements or the positions taken during conciliation discussions.[12] Indeed, the Court's reading of defendant's brief is buttressed when one considers the

---

[12] The Court notes that the Supreme Court used the abbreviation "*i.e.*" in its *Mach Mining* decision, as opposed to "*e.g.*" 135 S. Ct. at 1656. Use of the former indicates that the listing of "statements made and positions taken" is intended to be an exhaustive list, whereas use of "*e.g.*" would indicate the use of a non-exhaustive list. *Id.*

portions of defendants' supplemental summary judgment appendix (Doc. 98-1) that plaintiff *does not* seek to have stricken.

The bulk of the section of defendants' brief that plaintiff seeks to have stricken refers to and quotes portions of two separate letters authored by a member of L.L.'s medical team. Those letters appear, in full, in the aforementioned appendix, and plaintiff does not seek to have the letters stricken from the record. The lack of such a motion to strike indicates that plaintiff does not contend that the letters are statutorily protected from disclosure.

The timing of when plaintiff provided one of the two letters to defendants is also set forth in the section plaintiff seeks to have stricken. (*See* Doc. 99, at 12). This information, however, is also provided elsewhere in the same brief, and plaintiff has not moved to have the information stricken in that location. (*Compare id. with* Doc. 99, at 3). Just as plaintiff's choice not to move to strike certain portions of the appendix indicates that plaintiff does not believe those portions are statutorily protected as confidential, plaintiff's choice not to seek to have the information regarding timing stricken indicates that plaintiff does not believe the information is statutorily protected as confidential.

The section at issue also contains references to L.L.'s deposition. (Doc. 99, at 12). As before, plaintiff has not moved to have any portions of L.L.'s deposition stricken. This indicates that plaintiff does not think L.L.'s deposition is statutorily protected as confidential. Aside from one portion of defendants' brief that the Court will discuss below, the remainder of the relevant section of defendants' brief provides legal argument and does not contain any information that is specific to the conciliation process in the instant case.

In considering each of the aforementioned pieces of information contained in the section of defendants' brief that is at issue, the Court finds that the information is largely

non-specific and provides only enough information as is necessary to inform the Court of whether plaintiff attempted to conciliate the charges brought. Specifically, the information speaks to whether an investigation occurred prior to conciliation, but the information does not explain the parties' stances or positions regarding any matters— procedural or substantive—surrounding plaintiff's investigation and subsequent alleged attempts at conciliation. As such, the Court finds that *Mach Mining* allows the Court to consider such general information as is at issue in the instant case for the narrow purpose of assessing whether plaintiff complied with all statutory conditions precedent and that the information, therefore, need not be stricken.

As previously mentioned, the Court finds that there is one exception to the Court's finding that the information contained in the contested section of defendants' brief is of such a general nature that it has not been impermissibly disclosed. The first paragraph of Section I.B.2 of defendants' brief contains two sentences that refer to the letter in defendants' appendix that the Court has stricken. Each of those two sentences is immediately followed by a citation sentence that cites to the pages of defendants' appendix that contained the contested letter, before that letter was removed from the docket.

For the same reasons that the Court found it appropriate to strike the letter, the Court finds it appropriate to strike the aforementioned references to the letter in defendants' brief (Docs. 98, 99). The references in the brief disclose, explicitly, the parties' positions during conciliation. The Supreme Court has specifically held that such disclosures are prohibited. *Mach Mining*, 135 S. Ct. at 1656. The Court therefore finds that it is proper to strike the two aforementioned sentences and the accompanying citations.[13] As to defendants' brief, plaintiff's motion to strike (Doc. 102) is **granted in part and denied in part**.

---

[13] The Court notes that the legal sufficiency of defendants' arguments is not affected by striking this narrow portion of defendants' brief.

Defendants are instructed to redact the two aforementioned sentences from their brief by "blacking out" the subject material. Defendants are then to provide the new, redacted page to the Court for *in camera* review[14] and, upon the Court's verification that the correct information has been redacted, the Court will provide the redacted page to the Clerk of Court so that the page may be incorporated into defendants' brief (Docs. 98, 99) in place of the original page. When the Clerk of Court reincorporates the redacted page into defendants' brief, the Clerk of Court is also directed to reincorporate the pages currently docketed at pages 1 and 3 of Docket Number 98-2 into defendants' brief, where those pages originally appeared. Page 2 of Docket Number 98-2 is to be stricken from the docket. The brief that will appear at Docket Number 98 after the pages are reincorporated is not to be sealed.

## IV.     MOTIONS FOR SUMMARY JUDGMENT

### A.     Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, "[a] party

---

[14] Defendants are instructed to provide the redacted page to the Court via email, and defendants are instructed to copy all counsel of record on the email.

may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law . . .." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see*

*also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them" (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine . . .." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### B. Substantive Law

Plaintiff brought three claims against each defendant. (Docs. 19; 96, at 2; 99, at 2). Plaintiff asserts that each defendant violated: 1) Section 102(a) of Title I of the ADA, as codified at Title 42, United States Code, Section 12112(a); 2) Section 503(a) of Title V of the ADA, as codified at Title 42, United States Code, Section 12203(a); and 3) Section 503(b) of Title V of the ADA, as codified at Title 42, United States Code, Section 12203(b). (Doc. 19, at ¶¶ 14-18; *see also* Doc. 96, at 2). Section 102(a) prohibits discrimination on the basis of disability, Section 503(a) prohibits retaliation against an individual who, *inter alia*, asserts his or her rights under the ADA, and Section 503(b) prohibits interference with an individual's exercise of his or her rights under the ADA. Plaintiff has not sufficiently alleged claims for failure to accommodate under the ADA. (*But see* Doc. 96, at 2 (asserting plaintiff brought claims for failure to accommodate)).

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Discrimination prohibited by the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," and "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need . . . to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5).

Stated simply, the elements of a claim under Section 102 are: 1) a qualifying disability; 2) qualification to perform the essential functions of the position with or without a reasonable accommodation; and 3) an adverse employment action due to the disability. *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016) (citations omitted). The parties agree that for plaintiff to establish a claim of retaliation under Section 503(a), plaintiff must show that L.L. engaged in a protected activity, that L.L. suffered an adverse employment action, and that there is a causal connection between the two. *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003). (*See also* Docs. 54-1, at 13; 67, at 18). A plaintiff alleging an interference claim under Section 503(b) must show that 1) the charging party engaged in activity statutorily protected by the ADA; 2) the charging party engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; 3) the defendants interfered on account of the charging party's protected activity; and 4) the defendants were motivated by an intent to discriminate. *See Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017) (citations omitted).

## C. Discussion

Plaintiff's motion for partial summary judgment "seeks judgment on liability against CRST Expedited only. At trial, [plaintiff] will prove liability of CRST International and will seek relief against both Defendants." (Doc. 84, at 1 n.1).

Plaintiff's motion concerns only plaintiff's "failure to hire and failure to accommodate claims." (Doc. 84, at 1). Plaintiff does not seek summary judgment on any element of the retaliation claim,[15] and plaintiff makes no mention of the interference claim. (*Id.*). The Court will therefore construe plaintiff's motion as seeking summary judgment on CRST Expedited's liability as to the discrimination claim. Defendants seek summary judgment as to 1) plaintiff's ADA claims of disability discrimination, retaliation, and interference; 2) plaintiff's claims for compensatory and punitive damages as to the retaliation claims; and 3) request that the Court strike plaintiff's jury demand on the retaliation and interference claims. (Doc. 54, at 2).

### 1. Discrimination

Defendants contend that plaintiff is not entitled to summary judgment on its claims for discrimination because plaintiff cannot show that L.L. was qualified to perform the essential functions of the job of an over-the-road truck driver. (Doc. 54-1, at 4). Consistent with plaintiff's motion for summary judgment as to CRST Expedited's liability on the discrimination claim, plaintiff argues that L.L. was, indisputably, qualified to perform the job because L.L. possessed a commercial driver's license and "successfully found employment as a long-haul truck driver with another company." (Doc. 84-1, at 6-8). Specifically, L.L. was denied employment with defendants in May 2015 (*Id.*, at 2), and began driving for a different company in November 2015 (*Id.*, at 8).

To determine whether an individual is "qualified" within the meaning of the ADA, the Court must conduct a two-part inquiry. *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). First, the Court must ask whether the charging party "possesses the requisite skills, education, certification or experience necessary for the job." *Id.*

---

[15] To the extent plaintiff's motion for summary judgment on the "failure to hire" claims amounts to a motion for summary judgment on the retaliation claims, such motion is denied. As is explained *infra*, a genuine dispute of material fact exists on the retaliation claim such that summary judgment is inappropriate.

(citations and internal quotation marks omitted). Second, the Court must determine whether the charging party "can, despite [his] impairments, perform the essential functions of the job either with or without reasonable accommodation." *Id.* (citations and internal quotation marks omitted).

Defendants argue that L.L. was not qualified to drive a commercial vehicle because L.L. had been involuntarily civilly committed two months prior to the date on which L.L. underwent a medical examination to receive clearance to drive commercially. (Doc. 54-1, at 5-6). Further, defendants assert that L.L. failed to disclose the full extent of his mental health history, including having a history of impulsive and destructive behaviors, anxiety, and blackouts. (*Id.*). Defendants have brought evidence showing that had the medical examiner been aware of any of this information, the medical examiner would not have found L.L. medically fit to drive commercially. (Doc. 54-3, at 17-20).

The Court finds that a genuine dispute of material fact exists as to whether L.L. could, despite his impairments, perform the essential functions of the job at the time L.L. applied for a job with defendants. Although L.L.'s ability to drive for a different trucking company beginning in November 2015 is potentially probative on L.L.'s ability to perform the duties of a commercial truck driver, the Court cannot find that L.L.'s employment beginning in November 2015, alone, is sufficient to show that L.L. could have driven for defendants at the time L.L. applied for a job with defendants.

L.L. was involuntarily civilly committed on March 10, 2015 (Doc. 54-3, at 22-23), and applied for a job with defendants approximately two months later (Doc. 84-2, at 2). Even assuming L.L. was mentally fit to drive a commercial vehicle in November 2015, this fact alone does not guarantee that L.L. was also fit to drive a commercial vehicle six months prior. Notably, a mere two months had elapsed between L.L.'s involuntary commitment and L.L.'s application to drive with defendants. Given that

L.L. was denied a job with defendants a mere two months after his involuntary commitment and L.L. did not procure a commercial driving job until six months after applying with defendants, the Court cannot find that L.L.'s procurement of the subsequent job is sufficient to show that L.L. was medically fit to drive at the time L.L. applied for a job with defendants. Further, L.L.'s subsequent ability to procure a commercial driving job indicates that L.L. *could have been* medically fit to drive commercially when defendants denied L.L.'s application for employment. Whether L.L. was medically fit to do so when defendants denied L.L.'s application, however, is a question of fact that must be resolved by the factfinder at trial. The cross motions for summary judgment as to plaintiff's claims of discrimination are, therefore, **denied**.

Further, defendants have not provided appropriate legal support for the contention that L.L. was not "qualified" to drive commercially. Although defendants have brought evidence that L.L. would not have passed the medical exam had the medical examiner been aware of L.L.'s full psychiatric history, defendants have not cited to legal authority showing that any alleged untruthful statements or omissions made during the medical exam would have rendered L.L.'s state commercial driver's license invalid. Defendants cite to guidance promulgated by the Federal Motor Carrier Safety Administration, which provides that omission or falsification of information during the medical examination *may* invalidate the examination, but defendants have not cited authority from the relevant state showing that such invalidation *did* occur and that such invalidation simultaneously served to invalidate L.L.'s commercial driver's license. (Doc. 54-1, at 8).

### 2. *Retaliation and Interference*

To establish a claim of retaliation, plaintiff must show a causal connection between plaintiff allegedly engaging in a protected activity and defendants not hiring plaintiff. Although defendants assert that the reason L.L. was not hired was because of defendants' "no pets" policy that was in place at the time (Doc. 54-1, at 13), a reasonable factfinder

could find that L.L. was not hired because L.L. raised his right to an accommodation under the ADA. Indeed, there is evidence both in favor of plaintiff and in favor of defendants on the issue of why L.L. was not hired. Amongst other evidence, plaintiff turns to the temporal proximity between L.L.'s request for an accommodation and defendants' refusal to hire L.L. (Doc. 67, at 19). Although not necessarily dispositive, a reasonable factfinder could find that L.L. requesting an accommodation and "simultaneously" being denied a job could indicate that L.L. was not hired specifically because he requested an accommodation. (*Id.*). As such, summary judgment on the retaliation claim is inappropriate. Defendants' motion for summary judgment as to the retaliation claim is **denied**.

Defendants argue that they are entitled to summary judgment on the interference claims because, defendants assert, plaintiff will be unable to show that plaintiff "interfered" with L.L.'s rights. (Doc. 54-1, at 15). Defendants do not address each way in which plaintiff could show "interference," and defendants, therefore, have not shown that they are entitled to judgment as a matter of law. (*Id.* (providing one *example* of a way in which defendants contend plaintiff will be unable to prove interference)). Even on the undisputed facts, however, the Court finds that summary judgment in favor of defendants would be improper as to the interference claim. Defendants argue, again, that it refused to hire L.L. because of the "no pets" policy that was in place at the time. (*Id.*). Assuming, *in arguendo*, that this contention is true, a reasonable factfinder could find that defendants "interfered" with L.L.'s rights.

In addressing a similar issue, the Ninth Circuit Court of Appeals held that "the plain language of § 503(b) clearly prohibits a supervisor from threatening an individual with transfer, demotion, or forced retirement unless the individual forgoes a statutorily protected accommodation." *Brown v. City of Tucson*, 336 F.3d 1181, 1192-93 (9th Cir. 2003). If plaintiff is able to prove that L.L. was entitled to the accommodation sought

and that defendants threatened not to hire L.L. unless he abandoned his claim to the accommodation, plaintiff will be able to satisfy the "interference" element of the interference claims. The Court therefore rejects defendants' argument that plaintiff will be unable to prove the "interference" element of the interference claims. Defendants have not challenged any other element of the interference claims and, as such, defendants' motion for summary judgment as to the interference claims is **denied**.

### 3. *Damages and Jury Demand*

Defendants argue that plaintiff is not entitled to legal relief[16] on plaintiff's retaliation and interference claims and request that the Court limit plaintiff's remedy to equitable relief. (Doc. 54-1, at 15-16). Based on defendants' argument that plaintiff is entitled only to equitable relief, defendants request that the Court strike plaintiff's jury demand as to the retaliation and interference claims. (*Id.*, at 17). Plaintiff does not provide authority or argument in opposition to defendants' motion regarding damages and the jury demand. (*See* Doc. 67, at 22). Instead, plaintiff asserts that it would be premature for the Court to decide the issue of damages at the present time. (*Id.*). It is not clear at what point plaintiff would consider the issue to no longer be "premature." (*See id.*).

Defendants argue that punitive and compensatory damages for plaintiff's interference and retaliation claims[17] are not authorized under Section 503. (Doc. 54-1,

---

[16] Defendants cite Title 42, United States Code, Section 12203 for the proposition that compensatory damages are not recoverable for retaliation and interference claims. (Doc. 54-1, at 15-16). Defendants do not explicitly make the same argument as to punitive damages. When read in context, however, it would appear that defendants intended the same argument to apply to both compensatory and punitive damages. For purposes of the instant motion, the Court will construe defendants' argument as being applied to both compensatory and punitive damages.

[17] Defendants do not argue that punitive and compensatory damages are not recoverable as to plaintiff's discrimination claims. The Court notes that Title 42, United States Code, Section

at 16).  Section 503 provides, in relevant part, that the remedies set forth in Title 42, United States Code, Section 12117 apply to claims brought under Section 503.  That Section, in turn, refers, in relevant part, to the remedies provided in Title 42, United States Code, Section 2000e-5.  Although Section 2000e-5(g) addresses equitable relief, Section 2000e-5 does not address whether compensatory or punitive damages may be awarded.  The Civil Rights Act of 1991, as codified at Title 42, United States Code, Section 1981a, however, expands the remedies available under Section 2000e-5 in certain circumstances and, in those circumstances, permits an award of compensatory and punitive damages.  Section 1981a(a)(1) provides as follows:

> In an action brought by a complaining party under Section 706 . . . of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5) against a respondent who engaged in unlawful intentional discrimination . . . prohibited under Section 703, 704, or 717 of the [Americans with Disabilities Act] (42 U.S.C. 2000e-2, 2000e-3, 2000e-16), . . . the complaining party may recover compensatory and punitive damages . . . .

Plaintiff has not brought a claim under Sections 702, 704, or 717 of the ADA.  As a result, the terms of Section 1981a do not explicitly provide for compensatory or punitive damages for plaintiff's interference and retaliation claims.  The Court therefore must determine whether such damages are recoverable in spite of the statute's silence on such damages.  The Court finds a decision from the Seventh Circuit Court of Appeals to be instructive:

> We . . . conclude that the 1991 Civil Rights Act does not expand the remedies available to a party bringing an ADA retaliation claim against an employer and therefore compensatory and punitive damages are not available.  A close reading of the plain language of § 1981a(a)(2) makes it clear that the statute does not contemplate compensatory and punitive damages for a retaliation claim under the ADA.  Section 1981a(a)(2)

---

1981a(b) provides for punitive and compensatory damages for discrimination claims that have been brought under Section 102 of the ADA.

permits recovery of compensatory and punitive damages (and thus expands the remedies available under § 2000e-5(g)(1)) only for those claims listed therein. With respect to the ADA, § 1981a(a)(2) only lists claims brought under §§ 12112 or 12112(b)(5). Because claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims. Instead, the remedies available for ADA retaliation claims against an employer are limited to the remedies set forth in § 2000e-5(g)(1). *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.").

*Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 965 (7th Cir. 2004).

The Eighth Circuit Court of Appeals has not opined on whether retaliation or interference claims may provide the basis for an award of compensatory or punitive damages. Most courts to consider the issue, however, including two district courts within the Eighth Circuit, have followed the Seventh Circuit's rationale in *Kramer*. *See, e.g.*, *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1264-70 (9th Cir. 2009); *Harms v. City of North Platte*, No. 8:17CV301, 2017 WL 6501848, at *1-2 (D. Neb. Dec. 19, 2017); *Casteel v. City of Crete*, No. 4:16CV3166, 2017 WL 3635184, at *1-2 (D. Neb. Aug. 23, 2017); *Wilkie v. Luzerne Cnty.*, No. 3:14cv462, 2014 WL 4977418, at *2-4 (M.D. Pa. Oct. 6, 2014); *EEOC v. Faurecia Exhaust Sys., Inc.*, 601 F. Supp.2d 971, 973-76 (N.D. Ohio 2008); *Brown v. City of Lee's Summit*, No. 98-0438-CV-W-2, 1999 WL 827768, at *2-6 (W.D. Mo. June 1, 1999). *But see Rumler v. Dep't of Corr.*, 546 F. Supp.2d 1334, 1339-43 (M.D. Fla. 2008); *Edwards v. Brookhaven Science Assoc., LLC*, 390 F. Supp.2d 225, 233-36 (E.D.N.Y. 2005). The Court agrees with the Seventh Circuit's analysis in *Kramer* and, therefore, finds that plaintiff is not entitled to compensatory or punitive damages on the retaliation claims.

Further, the Seventh Circuit's analysis in *Kramer* is equally applicable to plaintiff's interference claims. The Seventh Circuit's finding that compensatory and punitive damages are not recoverable on ADA retaliation claims is based on Section 503's absence from Section 1981a(a)(1). Plaintiff's interference claims stem from Section 503(b). Section 503 is wholly absent from Section 1981a(a)(1); as such, if compensatory and punitive damages must be barred for actions brought under Section 503(a), compensatory and punitive damages likewise must be barred for actions brought under Section 503(b). The Court therefore concludes that plaintiff is not entitled to compensatory or punitive damages on either plaintiff's retaliation claims or plaintiff's interference claims. Defendants' motion for summary judgment to bar compensatory and punitive damages on plaintiff's retaliation and interference claims is **granted**.

The Court notes that when confronted with the issue of whether an award of compensatory and punitive damages was proper on an ADA retaliation claim, the Eighth Circuit upheld an award of compensatory and punitive damages. *Foster v. Time Warner Entm't Co., L.P.*, 250 F.3d 1189 (8th Cir. 2001). In *Foster*, however, the Eighth Circuit only addressed 1) whether plaintiff proved all elements of her case, 2) whether the damages award was excessive, and 3) whether the district court erred in its evidentiary rulings and jury instructions. *Id.* at 1194. The Eighth Circuit was not called upon to address whether there was a proper basis for awarding compensatory and punitive damages for the retaliation claim, and the Eighth Circuit did not address the issue. This Court is therefore satisfied that, although at first blush it would appear that the Eighth Circuit has upheld an award of compensatory and punitive damages for an ADA retaliation claim, the Eighth Circuit considered only the issues that were raised on appeal and did not consider the issue that is now before this Court.

Likewise, in *Salitros v. Chrysler Corp.*, 306 F.3d 562, 574-76 (8th Cir. 2002), the Eighth Circuit upheld an award of punitive damages on an ADA retaliation claim, but

the Eighth Circuit only addressed whether the punitive damages award could stand in the absence of a compensatory damages award. The Eighth Circuit did not address whether such damages were statutorily authorized. *See also Kramer*, 355 F.3d at 965 (distinguishing *Salitros*). As such, in *Salitros*, the Eighth Circuit did not address the issue that this Court is now confronted with. The Court is satisfied that the Eighth Circuit cases that seem to have addressed the issue of compensatory and punitive damages did not reach the issue that is now before the Court and, therefore, are not relevant to the current inquiry.

In the absence of a right to recover compensatory and punitive damages, plaintiff is entitled only to equitable relief on the retaliation and interference claims. *See* 42 U.S.C. § 2000e-5(g)(1). *See also Alvarado*, 588 F.3d at 1270 ("Because we conclude that ADA retaliation claims are redressable only by equitable relief, no jury trial is available."). Plaintiff has asserted no other basis for its right to a jury trial on the retaliation and interference claims. The Court therefore finds that plaintiff is not entitled to a trial by jury on plaintiff's retaliation and interference claims. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 43-44 (1989) (holding that the Seventh Amendment does not guarantee the right to a trial by jury for equitable claims). Defendants' motion to strike plaintiff's jury demand as to the retaliation and interference claims is **granted**.

## V. CONCLUSION

For the aforementioned reasons, the Court's rulings are as follows: 1) defendants' motion for summary judgment (Doc. 54) is **granted in part and denied in part**; 2) plaintiff's motion for partial summary judgment (Doc. 84) is **denied**; 3) plaintiff's first motion to strike (Doc. 77) is **granted**; 4) plaintiff's second motion to strike (Doc. 102) is **granted in part and denied in part**; and 5) defendants' motion to amend their answer (Doc. 93) is **denied**.

**IT IS SO ORDERED** this 7th day of December, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa